In the Matter of Sonya R. McCUTCHEN, Debtor.

**Bankruptcy No. 98–43392–WS.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 12, 1998.

Charles J. Schneider, Livonia, MI, for Debtor.

Richard A. Green, Bingham Farms, MI, for Consumer Portfolio Services.

**OPINION RELATING TO VALUE OF AUTOMOBILE**

WALTER SHAPERO, Bankruptcy Judge.

In her Chapter 13 Plan, the Debtor proposes to retain possession and use of a 1995 Plymouth Neon Four Door Sedan automobile, the value of which she proposes to cram down to $4,000—a value which the secured party contested at the confirmation hearing.

The parties agreed to submit the valuation of this vehicle for decision on the basis of the evidence hereinafter referred to.

Debtor purchased the used car at issue on or about April 14, 1997, under an installment contract and security agreement stating that its cash price was $8,500, payment of which, including interest at a rate of Nineteen (19%) percent per year, was to be made in 48 monthly installments of $279.74, commencing May 1, 1997. Debtor testified the condition of the automobile is "fair" and that it has no scratches, that it has four bad tires (which would cost $100 to replace with four used tires) and that it has a cracked windshield. The actual mileage of the automobile at the time Debtor purchased it was 65,585. Debtor estimated the current mileage to be approximately 83,000. The Debtor offered no evidence with respect to her claimed $4,000 value other than her own indicated testimony.

Creditor's evidence with regard to value consists of the N.A.D.A. Official Used Car Guide for February of 1998, Central Edition (sometimes referred to as the "blue book" even though it is really yellow!). Creditor cites the therein listed "trade-in" value of this automobile to be $6,450, the "loan" value of the automobile to be $5,825, and the "retail" value of the automobile to be $8,025. It is the Creditor's argument that something approximating the indicated retail value of the automobile is the proper valuation. It appears from the referred to publication that 1995 Plymouth Neon 4 door sedans came in two models, a regular, unnamed basic model and a so-called "Highline" model—the latter having somewhat higher values. Since both Debtor's purchase agreement and the vehicle title introduced into evidence merely refer to a Neon four door, and there is no other evidence on the subject, the Court concludes that the automobile involved is more likely the referred to four door basic sedan model and not the Highline model. For that vehicle, the "trade in" value is listed as $5,950, the "loan" value is $5,375 and the "retail" value is $7,500. Neither Debtor nor creditor offered any evidence as to the presence or absence of any equipment and/or accessories or other such items (or the lack thereof) which might affect the value of the vehicle one way or another.

The parameters of the inquiry in this case are essentially determined by *Associates Commercial Corp. v. Rash,* — U.S. —, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). In *Rash,* a Chapter 13 Debtor under his plan sought to retain possession and use of a truck encumbered by a lien. The dispute centered on the value of the secured creditor's interest in the truck, which is similar to the situation in this case, except that the Debtor's retained use of the automobile in this case is for her own personal use and to commute back and forth to her employment, rather than for the debtor's business, as was the situation in the *Rash* case. (Such is a distinction without a difference). The Supreme Court concluded that a "replacement value" standard, rather than the foreclosure value standard, is the one to use, and left to the bankruptcy courts the identification of the best way of ascertaining replacement value on the basis of evidence presented in each case. The Supreme Court defined replacement value as essentially the price a willing buyer in the debtor's trade, business, or "situation" would pay to obtain property of like age and condition from a willing seller. In its now famous footnote 6, the *Rash* Court also went on to say that the replacement value in the context of that case should not include certain items that reflect the value of the items the debtor does not receive when the debtor retains the vehicle and gave examples of such as being warranties, inventories, storage, reconditioning, etc.

Given the language and context of the *Rash* case, it seems that the starting point must be what it would cost this particular Debtor to go out and obtain an automobile of like age and condition. Since this Debtor is an individual consumer and the Debtor herself purchased this automobile approximately one year ago from what appears on the relevant documents to be a retail automobile dealer, that starting point is essentially what is set forth in the creditor's evidence as to the "retail" value of the automobile. The ending point, however, requires appropriate adjustments, supported by evidence and the *Rash* opinion, and what must logically follow

from, and be consistent with, the premises and assumptions built into utilization of the particular publication involved, or other evidence submitted.

■ Therefore, as a general rule of thumb, in the absence of evidence from or on behalf of a Debtor, the credibility and weight of which in relation to the other evidence dictates a different result, and in a situation where the secured creditor's evidence consists essentially only of the appropriate N.A.D.A.—Bluebook or similar publication [1] (or other admissible evidence of the same weight or to the same effect), the Court concludes that *Rash* requires the valuation of an automobile retained for use by a Chapter 13 Debtor who has not demonstrated access to a marketer other than one which sells to the general public, to be determined in the following manner:

Stated "retail" value (plus or minus appropriate adjustments by reason of the presence or absence of equipment or accessories affecting same)

Less: the sum of: (a) any appropriate high mileage deduction determined in accordance with the publication involved; and,

(b) any portion of the said retail value which by credible evidence can be shown to represent reconditioning or repair costs which would normally be made or incurred to put that vehicle in condition for sale at the indicated retail value (including that which might be necessary to bring the vehicle to the "clean" or other condition upon which the indicated retail value is premised); and

(c) any portion of the retail value which by credible evidence can be shown to be attributable to the cost or value of any warranty or guaranty (over and above any already existing and applicable

and continuing warranty or guaranty governing that vehicle) accompanying the vehicle incident to its sale by the seller at the indicated retail value.

■ Applying the indicated principles to the facts in this case, the Court gave little relative weight to the Debtor's stated belief as to the value of the automobile "to her" because of the absence of any corroborating evidence or indication as to what that belief was based on. In any event the standard to be applied is an objective, not a subjective, one (though an owner is entitled to give evidence as to value).

■ Consistent with the foregoing the required conclusion as to value for purposes of this case thus becomes:

| | | |
|---|---|---|
| "Bluebook" Retail Value | | $7,500 |
| (no evidence presented with respect to any adjustments to be made for presence or absence of equipment or accessories affecting same) | | |
| Less: (a) mileage adjustment | | $1,125 |
| (b) reconditioning/repair costs: | | |
| (i) tires | | 100 |
| (ii) windshield | | 125 |
| (iii) other | | –0– |
| (no evidence presented) | | · 225 |
| (c) warranty/guaranty type items (no evidence presented) | | –0 |
| | | $1,350 |
| Value | | $6,150 |

The Court has taken this occasion to issue this somewhat cursory written opinion given the ongoing substantial and not altogether consistent litigation over the theoretical and practical meaning and effects of *Rash,* and in the interest of possibly providing some direction to debtors, attorneys and other interested parties. This may be helpful particularly in Chapter 13 cases where the economics of the situation generally tend to minimize or preclude costly litigation on the subject notwithstanding the very real practical impact the issue may have in any given case.

Since the effect of this decision on the confirmability of debtor's plan cannot now be

1. Fed.R.Evid. 803(17) indicates such are not excluded from evidence by the hearsay rule.

ascertained, no ruling is here made on the issue of confirmation as such.